USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/24/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

KOLA SHIPPING LTD.,

                Plaintiff,

  -against-

SHAKTI BHOG FOODS LTD.,

                Defendant.

------------------------------------------------------------x

08 Civ. 8817 (GEL)

**OPINION AND ORDER**

GERARD E. LYNCH, District Judge:

      On October 14, 2008, plaintiff Kola Shipping Ltd. initiated the above-captioned action for maritime attachment against defendant Shakti Bhog Foods Ltd. Plaintiff also requested and obtained an order directing that this action be filed under seal. On October 15, 2008, this Court entered an ex parte Order directing the Clerk of the Court to issue a Process of Maritime Attachment and Garnishment on various financial institutions in the amount of $2,638,492.04 pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"). On January 12, 2009, upon being informed that no funds had yet been seized, plaintiff was instructed that the Order would be vacated and the case unsealed if plaintiff did not object within two days.

      Two weeks passed and plaintiff did not object. As a result, on January 29, 2009, the Court entered an Order vacating the Order of Attachment and directing the Clerk of the Court to close the case. Coincidentally, on the same day, plaintiff submitted a letter to the Court requesting leave to file an amended complaint adding certain entities alleged to be alter egos of defendant Shakti Bhog Foods Ltd and seeking attachment against those entities. Plaintiff also confirmed that it had still failed to attach any funds of the defendant and informed the Court that it had submitted the underlying claim to arbitration in London. Plaintiff subsequently informed the Court, by letter dated February 23, 2009, that the London arbitration had resulted with an award in plaintiff's favor in the amount of $1,635,772.88, plus costs and fees. Plaintiff further stated that it intended to move to confirm the award in this Court if and when the above-captioned action was reinstated.

      The Court, having reviewed plaintiff's proposed first amended verified complaint, cannot say that the claims are futile and would not withstand a motion to dismiss. As a result, in an excess of caution, and because plaintiff was not given a formal directive to show good cause why the case should not be dismissed prior to the Court's January 29, 2009 Order, that Order will be vacated and the plaintiff granted leave to file the amended complaint. This result is further justified in light of plaintiff's most recent indication that it will seek to confirm the London arbitration award before this Court.

However, attachment of the new defendants' property is not appropriate. The basis for the amended complaint is an allegation of veil piercing – specifically, that the following four entities are alter egos of defendant Shakti Bhog Foods Ltd.: Shakti Bhog Snacks Limited, Kumar Food Industries Limited, Crest Bio-Tech Limited, and Dash Exports Private Limited. "The prerequisites for piercing a corporate veil are as clear in federal maritime law as in shoreside law." Williamson v. Recovery Ltd. P'Ship, 542 F.3d 43, 53 (2d Cir. 2008), quoting Kirno Hill Corp. v. Holt, 618 F.2d 982, 985 (2d Cir. 1980). Ordinarily, corporate entities are distinct. Veil piercing is only appropriate "where the parent used the corporate entity to perpetrate a fraud, or where the parent has so dominated and disregarded the corporate entity's form that the entity primarily transacted the parent's business rather than its own." Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275, 282 (S.D.N.Y. 2006); see also Williamson, 542 F.3d at 53.

The standard for determining whether it is appropriate to seize the property of a entity alleged to be a maritime defendant's alter ego is a "reasonable grounds" standard – that is, there must be a showing that a condition for veil piercing is likely to exist. See Wajilam, 475 F. Supp. 2d at 281-82 (distinguishing the showing necessary to support an allegation of veil piercing from the showing necessary to sustain an attachment on such theory and requiring "reasonable grounds" for the latter); see also id. at 279-80 (describing "reasonable grounds" as akin to "probable cause" and requiring a showing that the alleged facts are *likely* to be true).

This Court recognizes that the "reasonable grounds" standard articulated in Wajilam arose in the context of a motion to vacate an attachment, and that the same standard does not automatically apply to the present context in which it must be determined whether to issue an order of attachment in the first instance. There is good reason, however, to apply a "reasonable grounds" standard in determining the propriety of such attachment as against alleged alter ego entities. However liberal the attachment procedures under Rule B may be, courts should not indiscriminately allow attachment of the property of every affiliate of a maritime defendant simply upon an allegation that such entity is associated with the proper defendant. Rather, it is prudent to require a showing that there is at least some basis for believing that the attachment will reach only those additional entities that are in fact alter egos of the maritime defendant. The "reasonable grounds" standard does just that.

Here, while plaintiff's allegations concerning corporate veil piercing are sufficient to sustain the amended complaint under the liberal notice pleading standards of Rule 8(a), Fed. R. Civ. P., they do not demonstrate "reasonable grounds" for issuing an attachment against entities that are not party to the underlying maritime dispute. Plaintiff's allegations against the new defendants are founded on generalized allegations in the attorney-verified amended complaint of common management and ownership and a number of instances in which one defendant acted as a guarantor for another. This evidence is insufficient to support a finding of "reasonable grounds" to believe that the parties are alter egos of one another. Cf. Williamson, 542 F.3d at 53 (vacating attachments where "plaintiffs' allegations regarding the liability of other corporate entities are supported merely by generalized assertions in the attorney-verified complaint in this action, unsworn court filings in related actions, and documentation showing common business addresses and management"). Unlike Wajilam, in which the plaintiff alleged (and presented

2

evidence on defendant's Rule E motion) "that funds payable to [defendant] are routinely diverted to [the alleged alter ego] in disregard of the companies' separate corporate forms," 475 F. Supp.2d at 283, plaintiff here alleges no conduct that is inconsistent with a proper regard for corporate formalities and for the separate corporate identities of the various allegedly affiliated corporations. Were allegations such as these adequate to support an attachment, the property of corporations in any way sharing common ownership with a party to a maritime dispute would routinely be interfered with, without any likelihood that the party would ultimately be found liable in the underlying dispute. Accordingly, the Court declines to issue a supplemental order for process of maritime attachment against these new defendants.

Plaintiff is entitled to maintain its claim here. However, as plaintiff apparently brings this action in this Court solely to obtain an attachment on defendant's property, there is no need to continue to clog the Court's docket with this matter for a prolonged period of time as there is no indication that defendant will have attachable property within this district. Rule B's procedures for the issuance of an order of maritime attachment are lenient. Recognizing the often transitory nature of a maritime party's assets, Rule B "permit[s] the attachment of assets wherever they can be found . . . ." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 443 (2d Cir. 2006). New York City, as a commercial center, is home to many financial transactions resulting in attachable assets frequently entering and passing through the district in the form of electronic fund transfers to or from a maritime defendant. See Consub Delaware LLC v. Schahin Engenharia Limitada, 543 F.3d 104, 108-12 (2d Cir. 2008). Nevertheless, after four months of unsuccessful attempts to attach funds, it is no longer reasonable to expect that any actual property of the defendant is or will be found in the district. This is particularly so under the circumstances of this case: the action was maintained under seal from its inception until the January 29, 2009 Order and accordingly, there is no basis to believe that defendant attempted to divert its funds to avoid attachment. Plaintiff cannot maintain an order of attachment indefinitely in the sheer hope that defendant's property may one day be found within the district. Accordingly, plaintiff is directed to move expeditiously to move to confirm the London arbitration award. If it has not done so by March 27, 2009, and if no funds have been attached in that time period, the case will be dismissed without prejudice.

Accordingly, it is hereby ordered that the Court's Order of January 29, 2009, is vacated, and plaintiff is granted leave to file the amended complaint. It is further ordered that plaintiff move to confirm the London arbitration award on or before March 27, 2009.

SO ORDERED:

Dated: New York, New York
February 24, 2009

_____
GERARD E. LYNCH
United States District Judge